IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RONALD R. PRINCE                                                        PLAINTIFF

V.                               NO. 12-2069

MICHAEL J. ASTRUE,[1]
Commissioner of the Social Security Administration                      DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Ronald R. Prince, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).[2]

**I.     Procedural Background:**

Plaintiff filed his application for DIB on April 28, 2009, alleging an inability to work since September 25, 2008, due to "Sleep apnea, compressed fracture in back, 2 herniated disks in neck, diabetes, depression." (Tr. 151, 156). An administrative hearing was held on March 10, 2010, at which Plaintiff appeared with counsel and testified. (Tr. 26-65).

By written decision dated August 23, 2010, the ALJ found that during the relevant time

---

[1]Carolyn Colvin became the Acting Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

[2]The record also indicates Plaintiff filed an application for supplemental security income (SSI) benefits under the provisions of Title XVI of the Act, and the Court presumes the decision covers the SSI application as well.

-1-

period, Plaintiff had an impairment or combination of impairments that were severe - degenerative disk disease of the cervical and lumbar spine, compression fracture of the L2 vertebra, diabetes mellitus, and bilateral heel spurs. (Tr. 13). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except he can only occasionally climb, balance, stoop, kneel, crouch, crawl, and reach overhead with his right upper extremity. The claimant does not have the capacity to work near hazards, such as machinery and unprotected heights, and cannot drive as a part of work.

(Tr. 14). With the help of a vocational expert (VE), the ALJ determined Plaintiff was unable to perform his past relevant work, but was capable of performing other jobs, such as cashier II, retail sales attendant, and assembly worker. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on February 1, 2012. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8, 9).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

II. **Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or

AO72A
(Rev. 8/82)

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff raises the following issues on appeal: 1) Whether the ALJ properly considered the combined effect of Plaintiff's impairments; 2) Whether the ALJ properly assessed Plaintiff's credibility; 3) Whether the ALJ properly assessed Plaintiff's RFC; and 4) Whether the ALJ fully and fairly developed the record.

### A. Combination of Impairments:

In his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" (Tr. 12). He also stated that an impairment or combination of impairments was "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Tr. 12). The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings. (Tr. 12). The ALJ concluded that Plaintiff did not have an impairment "or combination of impairments" that met

or medically equaled the severity of one of the listed impairments. (Tr. 14). This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

In addition, the ALJ considered the entire record and carefully discussed each of Plaintiff's alleged impairments. He found that with respect to Plaintiff's carpal tunnel syndrome, there was no evidence of record that Plaintiff's mild right carpal tunnel syndrome caused any significant work-related limitations. (Tr. 14). The ALJ also addressed Plaintiff's allegations of depression, stating that the medical evidence did not show that he had been diagnosed with, or treated for depression by any healthcare professional. (Tr. 14).

With respect to Plaintiff's sleep apnea, there is no indication in the records that Plaintiff's sleep apnea imposed any limitations on Plaintiff's ability to function in the workplace. There is also no indication that Plaintiff's alleged hypertension or knee pain imposed any limitations on Plaintiff's ability to function in the workplace. With respect to Plaintiff's neck pain, the Court agrees with Defendant that the ALJ considered these allegations, and recognized that Plaintiff had "cervical problems," and accounted for the neck pain by finding a severe impairment of degenerative disk disease of the cervical spine, and restricting Plaintiff to light work with additional postural, manipulative and environment limitations. (Tr. 14-18).

The Court finds there is substantial evidence to support the fact that the ALJ considered Plaintiff's impairments singly and in combination.

### C. Credibility Findings:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective

AO72A
(Rev. 8/82)

complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms of his impairments were not credible to the extent they were inconsistent with the RFC assessment. (Tr. 16-17).

The ALJ considered and addressed Plaintiff's testimony relating to his daily activities, noting that his testimony indicated that he was quite limited. (Tr. 18). He found that Plaintiff should not work near hazards of drive as part of his work. (Tr. 18). The ALJ further concluded that Plaintiff's testimony provided some additional evidence that supported the finding that he should avoid hazards and not drive, and the other limitations set forth in the RFC take into account Plaintiff's testimony. (Tr. 18).

The medical evidence reveals that on June 18, 2008, the doctor at Cooper Clinic noted that Plaintiff complained that walking made his pain worse. However, Plaintiff was observed getting out of his car on the parking lot and walking in to the waiting area without difficulty whatsoever. (Tr. 241). It was also found that Plaintiff's gait and station were normal, he had a

full range of motion of the upper and lower extremities, and full range of motion of the back on flexion and extension. (Tr. 241). Plaintiff was diagnosed with cervical and right trapezius strain and lumbar strain with old compression fracture L2, and was to continue with physical therapy. (Tr. 242). On July 7, 2008, Plaintiff reported mild improvement in his symptoms, and reported that he was "forcing himself" to walk four laps around a local park. (Tr. 291).

On August 1, 2008, Plaintiff presented himself to St. Edward Mercy Medical Center, complaining of nausea and vomiting as a result of the severe pain he was experiencing in his neck. (Tr. 217). Although Plaintiff has diabetes mellitus, he refused to take insulin because he said he could not drive a truck if he took insulin. (Tr. 217). Radiology reports indicated that there was some degenerative change in the lumbar spine, and a cervical MRI revealed mild acquired spinal canal stenosis at C5-6 level related to broad bulging of the disc. (Tr. 221). There was also bilateral foraminal spurring producing bilateral foraminal stenosis at this level. At the C3-4 level, there was moderate right posterolateral and foraminal spurring. (Tr. 221).

An August 8, 2008 report from River Valley Musculoskeletal Center reveals right cervical radiculopathy, intervertebral disc without myelopathy on the right at C5-6, and degenerative changes of the cervical spine. (Tr. 390). Plaintiff received a trigger point injection to his trapezius, and received approximately 90% relief of pain in that area. (Tr. 390).

On August 20, 2008, Dr. Anthony L. Capocelli reviewed Plaintiff's recent MRI and found it demonstrated two levels of probable spur disc complex to the right with some foraminal impingement, and no definitive nerve compression or spinal cord compression present. (Tr. 382). The doctor returned Plaintiff to light duty with no stooping or bending, no lifting over ten pounds, limited time with standing to 20 minutes at a time, and drinking a lot of fluid. (Tr. 382).

On September 4, 2008, Chris C. Honaker, OTR/LCHT, completed a Functional Capacity Evaluation Summary Report. (Tr. 396-419). He found that Plaintiff qualified for at least "medium" work. Tr. 397). The ALJ properly noted that Mr. Honaker reported that Plaintiff was capable of doing more physically than was demonstrated during the test, and called into question the reliability of the claimant's subjective complaints. (Tr. 18, 396).

On September 9, 2008, Dr. Michael C. Wolfe, of Cooper Clinic, found that Plaintiff had a full range of motion of both hips with good stability, good strength and good alignment and the lower extremities revealed intact motor and sensory function with good pulses. (Tr. 228). Dr. Wolfe noted that Plaintiff lacked 20 degrees of forward flexion, lacked 5 degrees of extension, and lacked 5 degrees of lateral flexion in both directions. (Tr. 228). Dr. Wolfe concluded that Plaintiff had a 5% impairment of the whole person based upon the compression and an additional 6% impairment based upon his loss of range of motion. (Tr. 228). He opined that Plaintiff should do no lifting of more than 40 pounds and no repetitive bending, stooping or carrying of greater than 20 pounds. (Tr. 228).

On November 21, 2008, Dr. Luke Knox, of Northwest Arkansas Neurosurgery Clinic, diagnosed Plaintiff as follows:

     1. C3-4 and C5-6 disc derangement
     2. Right radiculopathy
     3. L2 compression fracture
     4. L4-5 bilateral neuroforaminal stenosis

(Tr. 309). He further placed Plaintiff on a lifting restriction of not more than 20 pounds with no extended sitting, standing, bending, or twisting until his followup with Dr. Knox. (Tr. 310). On March 16, 2009, Dr. Knox determined that Plaintiff needed to get a C3-4 facet injection and

return to see him thereafter. (Tr. 303). On July 8, 2009, Plaintiff informed Dr. Knox that he received the facet injection and that he got no better, and actually he was worse. (Tr. 340). Dr. Knox reviewed Plaintiff's MRI scan and advised Plaintiff that he did have a significant arthropathy in the lumbar spine most severe at the L4-5 level, and that he did not see any problems that would cause impending compressive pathology. Dr. Knox recommended that Plaintiff go through an aggressive physical therapy program. (Tr. 340).

On June 23, 2009, a Physical RFC Assessment was completed by Dr. Jim Takach. (Tr. 332-339). Dr. Takach concluded that Plaintiff retained the ability to function with light work, and could occasionally climb ramp/stairs; ladder/rope/scaffolds; balance stoop, kneel crouch, and crawl. (Tr. 333-334). Plaintiff was also limited in reaching all directions (including overhead). (Tr. 335).

On February 11, 2010, Plaintiff again saw Dr. Knox, and told him that his back pain was worsening since September 14, when he was hit on the left side by a falling bail of paper and cardboard, pinning him against the wall. (Tr. 440). He had been in physical therapy in Van Buren with only temporary benefit. (Tr. 440). Dr. Knox noted that he had significant changes at L4-5, and was unable to define any evidence of neural foraminal encroachment. He did not see any evidence of significant compressive pathology. (Tr. 440). However, Dr. Knox indicated that the L2-3 disc space was somewhat concerning, and informed Plaintiff that the next step was to proceed with a myelograph to see if they may not be able to define evidence of compressive pathology that would indicate the L3 radiculopathy that he is suffering on the left. (Tr. 440-441).

At the hearing, Plaintiff indicated that he was scheduled for a mylegram and epidural injection on the 16th of that month. (Tr. 41). At the end of the hearing, the ALJ indicated that he

would leave the record open for thirty days in order for Plaintiff's attorney to produce records regarding the myelogram. (Tr. 64). However, no evidence was presented regarding the myelogram, and there are no additional records from Dr. Knox or any other treating physician over the next six months prior to the ALJ's August 2010 opinion.

The ALJ gave the opinions of Dr. Wolfe, Dr. Knox, and the state agency substantial weight, and based upon the foregoing, as well as those reasons given in Defendant's well-reasoned brief, the Court finds that there is substantial evidence to support the ALJ's credibility findings.

    C.    **RFC Assessment:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

The ALJ gave Dr. Wolfe's opinion substantial weight. (Tr. 17). Dr. Wolfe found that

Plaintiff should do no lifting of more than 40 pounds and no repetitive bending, stooping or carrying of greater than 20 pounds. (Tr. 382). This was supported by the opinion of Dr. Knox and Chris Honaker, OTR/LCHT. These limitations were also included in the ALJ's RFC assessment. The Court is of the opinion that the overall medical evidence, including the medical opinions set forth above, supports the ALJ's RFC assessment, and that the ALJ gave proper weight to the physician's opinion.

**D.     Failure to Fully Develop the Record:**

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 989).

As noted by the Defendant, the record in this case consists of 451 pages, a hearing was

conducted where Plaintiff was represented by counsel and testified, the medical records dated from 2008 through 2010 were included in the record, and the opinions of the treating physicians as well as the state consultants were included. Clearly, the existing medical sources contain sufficient evidence for the ALJ to make a determination.

Based upon the forgoing, and for those reasons given by Defendant in his well-reasoned brief, the Court finds there is substantial evidence to support the ALJ's findings.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 22nd day of May, 2013.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)